UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISMIE MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. 04 C 7217 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| UNITED STATES DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The U.S. Department of Health and Human Services ("HHS") denied federal insurance coverage for a malpractice action against Dr. Godwin O. Onyema ("Onyema"). Ismie Mutual Insurance Company ("Ismie") filed a four-count complaint against HHS seeking to overturn the denial of coverage.[1] Ismie asks this court to review HHS's negative coverage determination under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. The parties have filed cross-motions for summary judgment.[2] The determinative issue underlying the motions is whether Onyema is excluded from coverage under the Federal Tort Claims Act ("FTCA") and the Federally Supported Health Centers Assistance Acts ("FSHCAA") of 1992 and 1995 because he contracted with Access Community Health Network ("Access") through his eponymous

---

[1]In its September 23, 2005 order, the court granted the motion to dismiss Access Community Health Network and Onyema as defendants in this suit. It appears that Sherry Avery, the plaintiff in the medical malpractice action, is still a party to this action.

[2]HHS filed a motion to dismiss or alternatively for summary judgment. Since Ismie later filed a cross-motion for summary judgment and both parties have filed Local Rule 56.1 statements of undisputed material facts as well as responses to the Local Rule 56.1 statements, the court will treat HHS's motion as a motion for summary judgment.

1

professional corporation instead of as an individual.

**I.      Background**

   A.      <u>Federally Supported Health Centers Assistance Act</u>

The FSHCAA expanded the federal government's waiver of sovereign immunity under the FTCA. Although the FTCA generally covers only employees of the federal government, under the FSHCAA, federally supported health centers, their employees, and certain contractors are deemed to be employees of the Public Health Service ("PHS") for the purpose of medical malpractice suits. 42 U.S.C. § 233(g)(1)(A). Once a person is deemed an employee of the PHS, the FTCA provides the exclusive remedy for alleged malpractice. 42 U.S.C. § 233(a). Under the FTCA, the government will be substituted as the party-defendant in place of the individual defendant, and the case will be removed to federal court. When this occurs, the case is then often dismissed for failure to exhaust administrative remedies.

Covered contractors must be physicians or "other licensed or certified health care practitioners." 42 U.S.C. § 233(g)(1)(A). Those contractors covered by the statute are further limited by 42 U.S.C. § 233(g)(5), which states:

> an individual may be considered a contractor of an entity . . . only if: (A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or (B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

Based on this language, HHS's Bureau of Primary Health Care ("BPHC") issued Policy Information Notice ("PIN") 99-08 (April 12, 1999), at ftp://ftp.hrsa.gov/bphc/docs/1999PINS/PIN99-08.PDF. PIN 99-08 states that "for contract

providers, the contract must be between the Health Center and the individual provider. . . . A contract between a deemed Health Center and a provider's corporation does not confer FTCA coverage on the provider." HHS contends that, based on this PIN and on the statutory language which refers to contractors as "individuals," 42 U.S.C. § 233(g)(5), and which refers to contractors using the personal pronoun "who," 42 U.S.C. § 233(g)(1)(A) ("any contractor of such an entity <u>who</u> is a physician"), to be covered, contractors must contract with the covered health center in their individual capacity and not through a corporation.[3]

 B. <u>Prior Cases Involving Onyema</u>

Although federal case law interpreting the FSHCAA is scarce, this is the third time that a court in this district has been asked to decide Onyema's status under the FSHCAA. In *Alexander v. Mount Sinai Hospital Medical Center of Chicago*, the Government deemed Onyema to be a federal employee under the FTCA, and the malpractice plaintiff fought that determination. 165 F. Supp. 2d 768, 770 (N.D. Ill. 2001). In that case, the employment contract was the same contract as is at issue here; the parties to the contract were Access (formerly Sinai Family Health Centers) and Onyema Medical Service, Ltd, "an Illinois Medical Service Corporation whose employee is a physician licensed to practice medicine in all its branches in the State of Illinois." *Id.* at 771. The court stated: "While the physician referenced in the contract is clearly Dr. Onyema, and it was Dr. Onyema who signed the document on behalf of the corporation, there is no direct employment agreement between Sinai and the doctor

---

[3]The statute refers to a covered health center as an "entity" that "is a public or non-profit private entity receiving Federal funds under [42 U.S.C. § 254b]." 42 U.S.C. § 233(g)(4). A health center under 42 U.S.C. § 254b is an entity that serves medically underserved populations, including migratory workers and the homeless, among others. 42 U.S.C. § 254b(a)(1).

individually." *Id.* Citing *Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000), the plaintiff argued that Onyema was not a contractor covered by the FSHCAA because he contracted with Sinai through his eponymous professional corporation. *Id.* The court found *Dedrick* distinguishable because *Dedrick* involved physicians who contracted through a medical foundation whereas Onyema contracted through a professional corporation that "he founded and of which he is the sole shareholder and employee." *Id.* at 772. The court held that "Onyema Medical Service acted as Onyema's alter ego with respect to his professional services relationship with Sinai" and that Onyema was covered under the FSHCAA and the FTCA. *Id.*

In *Buckley v. Mount Sinai Hospital Medical Center*, No. 01 C 4938 (N.D. Ill.), the government changed its position with respect to Onyema, again under the same contract that is at issue in the present case. In that case, the government removed the medical malpractice case to federal court, asserting that the medical center was deemed a federal employee under the FSHCAA. The court then dismissed the case against the medical center for plaintiff's failure to exhaust administrative remedies. Upon the government's representation that Onyema was not a federal employee under the FSHCAA, the court remanded the case against Onyema to state court. Onyema asked the court to reconsider its ruling because the government had previously deemed Onyema a federal employee in *Alexander*. The government responded that it had made a mistake in *Alexander* and that it no longer deemed Onyema to be a federal employee. The court accepted the government's position because "courts are wary of substituting their judgment for that of the Department of Health and Human Services." *Buckley v. Mount Sinai Hospital Medical Center*, No. 01 C 4938 (N.D. Ill. April 12, 2002). The court stated: "The Department has reverted to a bright line standard, only contractors are deemed federal

4

employees, and that is a reasonable construction we believe compelled to follow." *Id.*

  C.  Denial of Coverage in this Case

  On July 1, 1997, HHS deemed Access to be an entity covered under the FSHCAA. This letter stated that Access and its officers, governing board members, employees, and contractors had liability protection under the FTCA. In August 1999, Onyema allegedly committed medical malpractice in treating Sherry Avery ("Avery"). Avery filed her malpractice case in the Circuit Court of Cook County in August 2001. On April 20, 2004, HHS deemed Access to be covered under the FSHCAA, but determined that Onyema was not covered. HHS based its determination as to Onyema on PIN 99-08; *Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000); and *Delvalle v. Sanchez*, 170 F. Supp. 2d 1254 (S.D. Fla. 2001). HHS also recognized its contradictory decisions as to Onyema in the *Alexander* and *Buckley* cases discussed above.

  Based on its determination that Access was covered by the FSHCAA, the government removed Avery's case to federal court in *Avery v. U.S.*, No. 04 C 3225 (N.D. Ill.) on May 6, 2004. The government then moved to dismiss Avery's case against Access for failure to exhaust Avery's administrative remedies. The court dismissed the claims against Access and remanded the claims against the remaining defendants to state court.

  Since Avery's case has been proceeding against Onyema in state court, Ismie, Onyema's medical malpractice insurer, has been providing him with a defense. In 2001, Access took out a medical malpractice insurance policy with Ismie. Onyema and his eponymous professional corporation are named as additional insureds under the policy. The policy contains an exclusion which states: "This insurance does not apply: to liability of any 'insured' arising out of the rendering of or failure to render 'professional services' for or on behalf of Access Community

Health Network or any of it's [sic] clinics or facilities for 'claims' which could be covered under the Federal Tort Claims Act. This exclusion applies to all 'claims' which should normally be covered under the Federal Tort Claims Act regardless of whether or not the 'insured' follows proper 'claim' reporting procedures or other duties which may be stipulated in the Federal Tort Claims Act to secure coverage." Thus, Ismie seeks a declaration that Onyema is a covered contractor under the FSHCAA, that its policy exclusion applies, and that HHS is responsible for Onyema's defense.

## II. Discussion

### A. Judicial Estoppel

Ismie argues that HHS should be judicially estopped from arguing that Onyema is not covered under the FSHCAA because HHS took the contrary position in Alexander. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Although "probably not reducible to any general formulation of principle," courts generally consider several factors in determining whether the doctrine of judicial estoppel applies to a case. *Id.* at 750. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* "A third consideration is whether the party

seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

In this case, the first factor is satisfied because HHS has taken a position (that Onyema is not deemed a federal employee under the FSHCAA) that is clearly inconsistent with its position in *Alexander* (that Onyema should be deemed a federal employee). In *Alexander*, the medical malpractice plaintiff argued that Onyema should not be deemed a federal employee because he contracted through his eponymous professional corporation and not as an individual. HHS succeeded in persuading Judge Kocoras that Onyema was indeed covered. This court's acceptance of HHS's contrary position now would create a perception that either this court or the *Alexander* court was misled. Thus, the second factor supports application of judicial estoppel.

Because Ismie cited and applied the pre-*New Hampshire* standard for judicial estoppel, Ismie did not apply the third factor. Nevertheless, the court notes that Ismie may have been prejudiced by HHS's change in position because the effective date of the insurance policy issued by Ismie is July 1, 1997, which falls in the interval between the decision that Onyema was covered under the FSHCAA in *Alexander* (decided April 13, 2001) and the contrary decision in *Buckley* (first decision to remand issued on October 10, 2001). At least in determining the cost of the insurance coverage to Access, which included Onyema as an additional insured, Ismie may well have suffered a detriment by HHS's representation that Onyema was covered under the FSHCAA in *Alexander*. Since Ismie did not argue this point, however, the court will consider the third factor as neutral.

HHS's only justification for its changed position is that it made a mistake in *Alexander*. HHS argues that the court can apply estoppel against the government only if Onyema shows that

7

the government engaged in affirmative misconduct. The only case cited by HHS for this proposition, *Gibson v. West*, 201 F.3d 990 (7th Cir. 2000), is inapposite because it applied the affirmative misconduct requirement when a party is seeking to apply <u>equitable</u> estoppel against the government to avoid its failure to exhaust administrative remedies. Other courts in this district have rejected the affirmative misconduct requirement when judicial estoppel (and not equitable estoppel) is involved. *See Czajkowski v. City of Chicago*, 810 F. Supp. 1428, 1444 (N.D. Ill. 1993).

Additionally, in *New Hampshire*, the Supreme Court addressed circumstances when a change in position by a governmental entity may be justified and would not warrant the application of judicial estoppel, such as "where the shift in the government's position is the result of a change in public policy" or "the result of a change in facts essential to the prior judgment." *New Hampshire*, 532 U.S. at 755-56 (citations and internal quotations omitted). Neither circumstance is present here. There is no indication of a change in public policy, as HHS relies primarily on case law and a policy, PIN 99-08, that were in place at the time HHS took the contrary position in *Alexander*. Further, the relevant facts here – the contract between Onyema's eponymous professional corporation and Access – are identical to the facts in *Alexander*. Therefore, judicial estoppel applies, and HHS is estopped from asserting that Onyema is not covered under the FSHCAA.[4]

---

[4]In keeping with the doctrine of judicial estoppel, courts have stated that: "An agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Independent Petroleum Ass'n of America v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996) (citing *Nat'l Ass'n of Broadcasters v. FCC,* 740 F.2d 1190, 1201 (D.C. Cir. 1984) (stating that the agency could not depart from its conclusion in a prior decision without reasoned explanation)); *see also Hatch v. Federal Energy Regulatory Commission*, 654 F.2d 825, 834 (D.C. Cir. 1981) ("As a general matter, an agency is free to alter its past rulings and practices

B.      Statutory Interpretation

Alternatively, the court finds that HHS's decision not to deem Onyema covered under the FSHCAA is contrary to law. Under the Administrative Procedure Act ("APA"), the court can overturn agency actions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Because the cases cited by HHS in its denial of coverage do not support its decision and other cases support a contrary result, the court finds that HHS's determination as to Onyema was contrary to law and that Onyema is a "contractor" within the meaning of the FSHCAA.

HHS's determination is based on its interpretation of "contractor" within the meaning of the FSHCAA. Specifically, because the FSHCAA refers to contractors as "individuals" and uses the personal pronoun "who," HHS contends that contractors must contract with the covered health center in their individual capacity and not through a corporation. See 42 U.S.C. § 233(g)(1)(A) ("any contractor of such an entity <u>who</u> is a physician"); § 233(g)(5) ("an <u>individual</u> may be considered a contractor of an entity") (emphasis added). Based on this interpretation, HHS issued PIN 99-08, which states that "for contract providers, the contract must be between the Health Center and the individual provider. . . . A contract between a deemed

---

even in an adjudicatory setting. However, it is equally settled that an agency must provide a reasoned explanation for any failure to adhere to its own precedents.") (citations omitted). In this case, HHS has not provided a reasoned explanation for its failure to treat Onyema the same in this case as it did in the identical case of *Alexander*. Instead, HHS states only that it made a mistake in *Alexander* and cites only to cases that explicitly declined to decide the issue involved here, namely, whether a contractor is excluded from coverage when he contracts through his eponymous professional corporation. HHS's prior change of position in *Buckley* provides the HHS with no help in this case because its change of position happened after the effective date of the policy as well as after the alleged malpractice. By failing to treat Onyema in the same way under identical operative facts and by not providing any reasoned explanation for the change, HHS has acted in an arbitrary and capricious fashion.

Health Center and a provider's corporation does not confer FTCA coverage on the provider."

Courts have agreed with this interpretation when the contract physician contracted through a multi-physician corporation. *Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000) (doctor had an employment contract with a health services foundation, and the foundation in turn had a contract with the FSHCAA-covered entity); *Delvalle v. Sanchez*, 170 F. Supp. 2d 1254, 1269-70 (S.D. Fla. 2001) (doctors contracted through multiple doctor professional association). HHS relied on these cases in denying coverage to Onyema, yet the courts in those cases both declined to decide the issue in this case, namely, whether a physician who contracts through his eponymous professional corporation is a contractor under the FSHCAA. *Dedrick*, 200 F.3d at 747 n.4 ("We decline to address the concerns raised by Youngblood at oral argument regarding whether an individual doctor who contracts with an eligible entity through his professional corporation would be protected. Those facts are not before this court."); *Delvalle*, 170 F. Supp. 2d at 1271 (distinguishing *Alexander*).

Courts that have addressed the precise issue present here have generally held that a physician who contracts with an FSHCAA-covered health center through his eponymous professional corporation is still a "contractor" under the FSHCAA. As discussed above, the court in *Alexander* held that Onyema was a contractor within the meaning of the FSHCAA under the same contract at issue in this case. *Alexander*, 165 F. Supp. 2d at 772 (holding that "Onyema Medical Service acted as Onyema's alter ego with respect to his professional services relationship with [Access]").

Additionally, in *El Rio*, the plaintiffs were physicians who contracted with an FSHCAA-covered health center through their "individually-owned eponymous corporation[s]." *El Rio*

*Santa Cruz Neighborhood Health Center, Inc. v. Dep't of Health & Human Services*, 300 F. Supp. 2d 32, 34 (D.D.C. 2004). HHS denied the physicians coverage under the FSHCAA based on PIN 99-08. *Id.* at 35. The physicians sued asking the court to invalidate HHS's refusal to deem the physicians covered under the FSHCAA. *Id.* Citing *Alexander*'s reasoning as persuasive, the court held that the physicians' solely-owned corporations were alter egos of the physicians and that the contracts were essentially between the health center and each of them individually. *Id.* at 40-41. Therefore, the physicians should have been covered. Although the court also relied on personal guarantees signed by the physicians individually,[5] the court stated that either rationale rendered HHS's negative coverage determination arbitrary and capricious. *Id.* at 43.

On appeal, the majority of the D.C. Circuit panel relied on the fact that HHS did not address relevant evidence before it, namely, the personal guarantees signed by the physicians individually. *El Rio Santa Cruz Neighborhood Health Center, Inc. v. Dep't of Health & Human Services*, 396 F.3d 1265, 1278 (D.C. Cir. 2005). Judge LeCraft Henderson wrote a separate concurrence to address the issue present in this case, whether a physician is a contractor under the FSHCAA when the physician contracts through his solely-owned professional corporation. *Id.* at 1278. Judge Henderson stated: "While the contractor must be an 'individual' to receive coverage, nowhere does the FSHCAA elevate contractual form over substance. Of course, statutes that expand government liability – like the FSHCAA – must be construed strictly, but, as in Shakespeare's play, a physician who signs his name to a professional services contract

---

[5]The court stated that it need not rely on *Alexander* because the physician had signed personal guarantees with the health center. These guarantees established a contractual link between the physicians as individuals and the health centers. *Id.* at 41-42.

followed by 'P.C.' – manifesting his business name – is no less an individual under the FSHCAA than one who signs his name simply followed by 'M.D.'" *Id.* at 1278-79 (citations omitted).

The court finds this reasoning persuasive and wholly applicable to this case. Onyema's contract with Access stated that the contract is with "Onyema Medical Service, Ltd., an Illinois Medical Service Corporation whose <u>employee</u> is a <u>physician</u> licensed to practice medicine in all its branches in the state of Illinois." (emphasis added). The contract refers to Onyema Medical Service, Ltd. as "the Physician." Onyema signed the contract on the signature line under "Physician" on behalf of his eponymous professional corporation of which Onyema is the sole shareholder and employee. Thus, as the court found in *Alexander*, Onyema Medical Service, Ltd. acted as Onyema's alter ego in its contract with Access.

Nothing in the FSHCAA indicates that Congress intended for contractual form to be elevated over substance. If anything, Congress intended to clarify and broaden the scope of the FSHCAA when it enacted the 1995 amendments so that covered health centers would no longer have to carry malpractice coverage. See H.R. Rep. 104-398, at 6 (1995) ("The Committee expects that the enactment of this legislation extending the program, clarifying coverage, and improving procedures, along with continued efforts by the Department to implement the legislation, will lead many more health centers to drop their private malpractice coverage and participate fully in the program."). Access carries malpractice coverage on its physicians, including Onyema, who is a contract physician. If the court accepted HHS's interpretation, then as long as Onyema's contract was through his eponymous professional corporation, Access

12

would have to carry private insurance to cover him.[6] Since nothing in the legislative history indicates that Congress was concerned with the particular form of the contracts between contract physicians and covered health centers, elevating form over substance would not seem to advance Congress' intent: that coverage be expanded so that health centers could drop their malpractice insurance entirely. The court holds that the term "contractor" under the FSHCAA does not exclude an otherwise covered contract physician simply because he contracts with the covered health center through his eponymous professional corporation. HHS's decision that Onyema was not covered for this reason was contrary to law under the APA.

**III.  Conclusion**

For the foregoing reasons, Ismie's motion for summary judgment is granted, and HHS's motion for summary judgment is denied.

ENTER:


____/s/_____
Joan B. Gottschall
United States District Judge

Dated: February 8, 2006

---

[6]The court suspects that Access is not the only covered medical center that provides medical malpractice insurance for its contract physicians. Additionally, even if Onyema paid the cost of insurance himself, this cost would presumably be passed on to Access.